UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

CYNTHIA HOOPS,                          )
                                        )
              Plaintiff,                )
                                        )
vs.                                     )
                                        )    Cause No.      4:16-cv-01543-NAB
MEDICAL REIMBURSEMENTS                  )
OF AMERICA, INC., and                   )
MERCY HOSPITALS EAST                    )
COMMUNITIES,                            )    **JURY TRIAL DEMANDED**
                                        )
              Defendants.               )

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Cynthia Hoops, by and through her attorneys Holloran, Schwartz & Gaertner LLP, and brings this action on her own behalf and on behalf of a Class of persons defined herein against Defendants Medical Reimbursements of America, Inc. and Mercy Hospitals East Communities, and for her Class Action Petition alleges as follows:

### INTRODUCTION

1.      This class action asserts claims for breach of contract, conversion, unjust enrichment, tortious interference with contract, violations of the Missouri Merchandising Practices Act, and seeks injunctive relief in connection with Defendants' billing and collection practices.  Defendant Medical Reimbursements of America, Inc., working with and to the benefit of Defendant Mercy Hospital East Communities, has devised an unlawful billing process to maximize Defendants' revenue at the direct cost to patients.

### JURISDICTION AND VENUE

2.      The Circuit Court of St. Louis County has jurisdiction because the acts and/or omissions which are the subject of this lawsuit occurred in St. Louis County, both Defendants

transact significant amounts of business in St. Louis County, Mercy maintains its principal business office in St. Louis County and is a citizen of the State of Missouri, and Plaintiff is a resident of St. Louis County and is a citizen of the State of Missouri.

3.     Venue is proper in the Circuit Court of St. Louis County pursuant to Missouri's general venue statute, Mo. Ann. Stat. § 508.010.  In addition, venue is appropriate for the claims arising out of the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010 *et seq.*, because the statute applies to any company engaging in any of the activities regulated by the statute within the State of Missouri.

## THE PARTIES

4.     Plaintiff Cynthia Hoops ("Plaintiff") is an individual who at all times relevant herein resided, and continues to reside, in St. Louis County, State of Missouri, and is a citizen of the State of Missouri.

5.     Defendant Medical Reimbursements of America, Inc. ("MRA") is a Tennessee for-profit corporation, in good standing, and conducting business in the State of Missouri.  MRA markets itself to hospitals as a business that assists hospitals in identifying "unrecovered revenue" from patients who were injured in auto accidents to achieve "higher reimbursement rates" and "more revenue."  MRA provides investigative services, billing services, collections services, and lien generation services to hospitals and medical providers across the country.

6.     Defendant Mercy Hospitals East Communities ("Mercy") is a Missouri nonprofit corporation, in good standing, and conducting business in the State of Missouri.  Mercy operates as a hospital providing medical services, and does business as "Mercy Hospital St. Louis." Mercy maintains its corporate headquarters and principal business office at 615 S. New Ballas Road in St. Louis County, State of Missouri.

## FACTUAL BACKGROUND

7.      This class action involves commercial health insurance, auto insurance medical payments coverage, and Missouri medical liens.

8.      Commercial health insurance is a type of insurance coverage.  The insured, either individually or as part of a group, pays a premium to a private insurance company and that insurance company pays for medical expenses incurred by the insured.  This type of coverage pays for medical expenses whether the treatment is for a natural illness or traumatic injuries from an incident.

9.      Auto insurance medical payments coverage is a type of insurance coverage that the insured may purchase with his/her auto insurance.  Medical payments coverage is not required by law, and is additional insurance that can be purchased at the customer's option for a separate additional premium.  This coverage provides payment to the insured or the insured's medical providers when the insured is in an auto accident.  The insured can use this supplemental coverage for items not covered by his/her health insurance, such as deductibles, co-pays, out-of-pocket medical expenses, or items not included by health insurance such as supplies, alternative treatment methods, or ambulance services.  Alternatively, if the insured's bills are all paid by health insurance, the medical payments coverage can be paid directly to the insured personally.

10.     Missouri medical liens are liens that can be filed by a hospital or medical provider pursuant to Mo. Ann. Stat. § 430.230 *et seq.*  When the patient has been in an accident that was caused by someone other than the patient, and the patient is unable to pay for treatment, the hospital or medical provider can file a Missouri medical lien.  If and when the patient receives money from a settlement or verdict against the person or entity that caused his/her injury, the hospital or medical provider lien is satisfied out of the patient's settlement funds.  In other words,

the hospital or medical provider receives a share of the settlement funds because they have not been paid.

11.     When a patient seeks medical treatment, the hospital/provider typically requests information from the patient as to how the patient is going to pay for the treatment.  In response, the patient typically provides information as whether they have commercial health insurance, Medicaid, Medicare, or plan to make payment out of the pocket ("self-pay").

12.     When a patient has commercial health insurance, the insurance company typically satisfies the patient's medical bills at a discounted rate based on a contract the insurance company has with the hospital/provider, or as a result of the insurance company's ability to negotiate a discounted rate.

13.     Patients with commercial health insurance paid a premium to the insurance company to pay for medical treatment, whether the treatment is for a natural illness or a traumatic injury they incurred in an auto accident.  As set forth above, the insurance company typically satisfies these bills at a discounted rate.

14.     If a patient receives treatment from a hospital for traumatic injuries from an auto accident and his/her commercial health insurance company pays the bills, the patient may be required to reimburse his/her commercial health insurance company if he/she receives a settlement or judgment from the person/entity who caused the auto accident.  In such a scenario, however, the patient is only required to reimburse his/her commercial health insurance for the "discounted rate" amount that the hospital/provider was paid.

15.     Hospitals/providers that contract with MRA work by and through MRA to bill and collect from sources other than the patient's commercial health insurance when the patient was injured in an accident.  In other words, instead of billing and collecting from the patient's

4

commercial health insurance that satisfies the patient's bills at a discounted rate, MRA investigates and identifies other potential methods of collection that lead to higher reimbursement to the hospital and incentive fees for MRA—but to the financial detriment of the patient, and in violation of the patient's contractual and legal rights.

16.     When MRA and the hospital/provider choose not to bill and collect from the patient's commercial health insurance, the patient's financial obligation remains unpaid and at a "full rate" while MRA and the hospital/provider attempt collection from other sources. Commercial health insurance companies typically have strict guidelines with regard to notice and billing.  Delays in presenting bills to the commercial health insurance company place the patient at risk of the medical bills not being paid at all.

17.     When MRA and the hospital/provider bill and collect from the patient's auto insurance medical payments coverage ("Med Pay") instead of their commercial health insurance, they not only deprive the patient of his/her right to a discounted billing rate, but also deprive the patient of a benefit for which he/she paid an optional and additional premium—the patient can no longer use the Med Pay benefit for otherwise uncovered medical related services, and can no longer receive the Med Pay benefit as a direct cash payment.

18.     When MRA and the hospitals/providers assert a Missouri medical lien instead of collecting from the patient's commercial health insurance, they not only deprive the patient of his/her right to a discounted billing rate, but also make the satisfaction of the medical bills contingent on the patient bringing and succeeding in a claim or lawsuit, and then even if the claim or lawsuit is successful paying money from his/her own settlement funds to the hospital/provider for bills that should have already been satisfied.

19.     When MRA and the hospital/provider choose not to bill and collect from the patient's commercial health insurance and instead pursue these other sources of payment, their practices violate the patient's rights, and cause economic damage to the patient.

## PLAINTIFF'S EXPERIENCE

20.     On or about May 31, 2016, Plaintiff sustained injuries when she was involved in an auto accident.  She was taken via ambulance to Mercy Hospital in St. Louis County where she received medical treatment in the emergency room.

21.     Mercy was informed that Plaintiff had commercial health insurance through Blue Cross Blue Shield.

22.     Plaintiff's treatment resulted in medical charges in the total amount of $6,519.54. Plaintiff assumed that Mercy would submit the bill to her commercial health insurance, which is the usual and customary way that medical bills are processed for patients with commercial health insurance.

23.     At no time did Mercy or MRA inform Plaintiff that her commercial health insurance would not be billed for the services rendered.

24.     On or about July 7, 2016, MRA placed a Missouri medical lien in the amount of $6,519.54 upon all claims (including for personal injury) that Plaintiff may have with regard to the auto accident.  See "Notice of Missouri Hospital Lien" attached hereto as Exhibit 1. Although the lien was purportedly placed on behalf of Mercy, MRA requested payment be made directly to MRA.

25.     At no time did Mercy or MRA inform Plaintiff that they intended to place a Missouri medical lien for the full amount of the bill.

26.     At all relevant times herein, Plaintiff had auto insurance through State Farm, which included Med Pay coverage, for which Plaintiff paid an optional and additional premium.

27.     Without consulting Plaintiff and without receiving consent from Plaintiff, Defendants billed State Farm directly for the cost of Plaintiff's treatment.

28.     After receiving the bill, State Farm paid $5,000.00 directly to Defendants.  The payment exhausted all of Plaintiff's Med Pay benefit.

29.     At no time did Mercy or MRA inform Plaintiff that they intended to submit the bill directly to State Farm, or that they intended to seek payment through her Med Pay benefit.

30.     Upon information and belief, the amount collected by way of Plaintiff's Med Pay benefit ($5,000.00) was substantially more money than Defendants would have collected if the bill was submitted to Plaintiff's commercial health insurance and thereby subjected to the contractual discounted rate.

31.     When Defendants chose not to bill and collect from Plaintiff's commercial health insurance, Plaintiff's financial obligation remained unpaid and at a "full rate" while Defendants attempted collection from other sources.  Defendants placed Plaintiff at risk of the medical bills not being paid at all.

32.     When Defendants billed and collected from Plaintiff's auto insurance Med Pay instead of her commercial health insurance, they not only deprived Plaintiff of her right to a discounted billing rate, but also deprived Plaintiff of a benefit for which she paid an optional and additional premium—Plaintiff could no longer use the Med Pay benefit for otherwise uncovered medical related services, and could no longer receive the Med Pay benefit as a direct cash payment.

33.     When Defendants asserted a Missouri medical lien instead of collecting from Plaintiff's commercial health insurance, they not only deprived Plaintiff of her right to a discounted billing rate, but also made the satisfaction of the medical bills contingent on Plaintiff bringing and succeeding in a claim or lawsuit, and then even if the claim or lawsuit is successful paying money from her own settlement funds to Defendants for bills that should have already been satisfied.

34.     When Defendants chose not to bill and collect from Plaintiff's commercial health insurance and instead pursue these other sources of payment, their practices violated Plaintiff's rights, and caused economic damage to Plaintiff.

35.     Throughout the entire process, Defendants failed to provide Plaintiff with a fair and accurate representation of their billing and collecting practices.

### CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this class action on behalf of herself and all others similarly situated as Class Members pursuant to Missouri Rule of Civil Procedure 52.08.

37.     <u>MRA Class</u>:  Plaintiff seeks to represent a proposed Class ("MRA Class") initially defined as follows:

> All Missouri citizens, who were Missouri citizens at the time of receiving the medical treatment referenced herein and who remained Missouri citizens at the time this action commenced, who received medical treatment from any Missouri hospital/provider while being covered by valid commercial health insurance, and MRA sought collection from a source other than the patient's commercial health insurance such as asserting a medical lien or directly billing the patient's auto insurance Medical Payments Coverage, during the period of August 26, 2011 to the present.

38.     <u>Mercy Subclass</u>:  Plaintiff seeks to represent a proposed Subclass ("Mercy Subclass") initially defined as follows:

> All Missouri citizens, who were Missouri citizens at the time of receiving the medical treatment referenced herein and who remained Missouri citizens at the time this action commenced, who received medical treatment from any Mercy-owned or Mercy-affiliated hospital/provider in Missouri while being covered by valid commercial health insurance, and Mercy sought collection from a source other than the patient's commercial health insurance such as asserting a medical lien or directly billing the patient's auto insurance Medical Payments Coverage, during the period of August 26, 2011 to the present.

39.     Excluded from both the MRA Class and the Mercy Subclass are Defendants, Defendants' parents, subsidiaries and affiliates, their directors, officers and members of their immediate families; also excluded are any federal, state or local government entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

40.     Plaintiff is a member of the MRA Class and the Mercy Subclass (hereinafter referred to collectively as "the Class" unless otherwise specified) which she seeks to represent.

41.     Plaintiff reserves the right to modify the Class descriptions and Class periods based on the results of discovery.

42.     Plaintiff brings this action on behalf of herself and on behalf of the Class for relief pursuant to Missouri Rule of Civil Procedure 52.08.

43.     <u>Numerosity</u>:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Members of the Class number in the hundreds, if not thousands, and members of the Class are geographically dispersed across the State of Missouri.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

44.     <u>Common Questions of Law and Fact Predominate</u>:  There are questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.

45.     Common questions of law and fact relating to the MRA Class include, but are not limited to, the following:

a.     Whether MRA had a duty to notify Class members that it would not bill their commercial health insurance for the treatment rendered;

b.     Whether MRA had a duty to obtain authorization from Class members prior to directly billing their auto insurance Med Pay coverage;

c.     Whether MRA had a duty to obtain payment for bills through Class members' commercial health insurance prior to asserting a Missouri medical lien;

d.     Whether MRA converted Class members' property;

e.     Whether MRA was unjustly enriched by its business practices;

f.     Whether MRA tortiously interfered with a valid contract between Class members and their commercial health insurance carrier;

g.     Whether MRA misrepresented the nature of its business practices to Class members;

h.     Whether MRA's acts and practices violate Missouri's legislatively declared policies or common law principles as alleged herein;

i.     Whether MRA's acts and practices are likely to deceive reasonable members of the public;

j.     Whether MRA's acts and practices amount to deception, fraud, false pretense, false promise, misrepresentation, and/or unfair practice;

k. Whether MRA's acts and practices amount to concealment, suppression or omission of any material fact in connection with the sale or advertisement of services;

l. Whether MRA's acts and practices violate the Missouri Merchandising Practices Act, § 407.010 *et seq.*;

m. Whether MRA should be enjoined from continuing its business practices within the State of Missouri.

46. Common questions of law and fact relating to the Mercy Subclass include, but are not limited to, the following:

a. Whether Mercy had a duty to notify Class members that it would not bill their commercial health insurance for the treatment rendered;

b. Whether Mercy had a duty to obtain authorization from Class members prior to directly billing their auto insurance Med Pay coverage;

c. Whether Mercy had a duty to obtain payment for bills through Class members' commercial health insurance prior to asserting a Missouri medical lien;

d. Whether Mercy converted Class members' property;

e. Whether Mercy was unjustly enriched by its business practices;

f. Whether Mercy tortiously interfered with a valid contract between Class members and their commercial health insurance carrier;

g. Whether Mercy breached its contract with Class members' commercial health insurance carriers by failing to submit bills to commercial health insurance;

h. Whether Class members were third party beneficiaries to the contract between Mercy and their commercial health insurance carriers;

i. Whether Mercy misrepresented the nature of its business practices to Class members;

      j.      Whether Mercy's acts and practices violate Missouri's legislatively declared policies or common law principles as alleged herein;

      k.      Whether Mercy's acts and practices are likely to deceive reasonable members of the public;

      l.      Whether Mercy's acts and practices amount to deception, fraud, false pretense, false promise, misrepresentation, and/or unfair practice;

      m.      Whether Mercy's acts and practices amount to concealment, suppression or omission of any material fact in connection with the sale or advertisement of services;

      n.      Whether Mercy's acts and practices violate the Missouri Merchandising Practices Act, § 407.010 *et seq.*;

      o.      Whether Mercy should be enjoined from continuing its business practices within the State of Missouri.

47.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and other members of the Class sustained damages arising out of the same business practices.  The nature of Defendants' conduct is the same for Plaintiff and all members of the Class.  The factual bases of Defendants' conduct are common to the Class members and represent a common thread of actions resulting in injury to all Class members.  Plaintiff is asserting the same rights, making the same claims, and seeking the same relief for herself and all other Class members.

48.   <u>Adequate Representation</u>:  Plaintiff is an adequate representative of the Class because she is a Class member of each Class, and does not have interests that conflict with those of the other Class members she seeks to represent.  Plaintiff is represented by experienced and able Counsel, who have litigated class action lawsuits, and Plaintiff's Counsel intend to prosecute this action vigorously for the benefit of the Class.  Plaintiff and her Counsel will fairly and adequately protect the interests of the Class members.

49.    <u>Predominance and Superiority</u>:  This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.  Should individual Class members be required to bring separate actions, this Court and/or the courts throughout Missouri would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision of a single court.  Furthermore, for many, if not most, Class members, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice.  The limited size of each individual claim could not justify the expense of a separate lawsuit, so that without a class action there likely would be no relief despite the meritorious nature of the claims.  In addition, adjudication of individual Class members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.  Accordingly, this class action is appropriate for certification.

<u>**COUNT I**</u>
**BREACH OF CONTRACT**
**(BROUGHT BY THE MERCY SUBCLASS AGAINST MERCY)**

50.     Plaintiff, individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

51.     Mercy entered into a contract with Plaintiff's commercial health insurance carrier, and the commercial health insurance carriers of the other Class members.  At all relevant times herein, Plaintiff and the Class members were third party beneficiaries to said contract in that they would receive a "discount" or "adjustment" to the bill for services rendered.

52.     Pursuant to the contract, Mercy was required to submit medical bills to the commercial health insurance carrier when Plaintiff and the Class members receive treatment.

53.     Mercy did not submit Plaintiff's and the Class members' bills to their commercial health insurance carriers, and therefore breached the contract.

54.     Mercy's breach caused damage to Plaintiff and the Class members in one or more of the following ways:

   a.     Plaintiff's and the Class members' financial obligation remained unpaid and at a "full rate" while Defendants attempted collection from other sources;

   b.     Plaintiff and the Class members were placed at risk of the medical bills not being paid at all;

   c.     Plaintiff and the Class members were deprived of their right to a discounted billing rate;

   d.     Plaintiff and the Class members were deprived of a benefit for which they paid an optional and additional premium in that they could no longer use the Med Pay benefit for otherwise uncovered medical related services, and could no longer receive the Med Pay benefit as a direct cash payment;

      e.     The satisfaction of Plaintiff's and the Class members' medical bills was made contingent on them bringing and succeeding in a claim or lawsuit, and then even if the claim or lawsuit is successful paying money from their own settlement funds to Defendants for bills that should have already been satisfied; and

      f.     Plaintiff and the Class members suffered economic damage and violations of their rights.

55.     The resulting damage to Plaintiff and the Class members was foreseeable to Mercy.

56.     Mercy directly benefited from, and was unjustly enriched by, the contractual breach alleged herein.

WHEREFORE, Plaintiff prays for judgment against Mercy in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), an award of economic and non-economic damages, attorneys' fees and costs, prejudgment interest, injunctive relief, and for such other relief as this Court may deem just and proper.

### COUNT II
### CONVERSION
### (BROUGHT BY THE MRA CLASS AGAINST MRA & THE MERCY SUBCLASS AGAINST MERCY)

57.     Plaintiff, individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

58.     Plaintiff and the Class members purchased auto insurance, which was in full force and effect at all relevant times herein, and paid an optional and additional premium for Med Pay coverage.

59.     The Med Pay benefit is a specific chattel to which Plaintiff and the Class members had the exclusive right to control and possess at all relevant times herein.

60.     Without receiving consent from Plaintiff and the Class members, Defendants billed their auto insurers directly for the services rendered, received payment in the form of the Med Pay benefit, and thereby exercised unauthorized control over the Med Pay benefit.

61.     Defendants intended to possess and control the Med Pay benefit.

62.     Defendants deprived Plaintiff and the Class members of their right to possession and control of the Med Pay benefit.

63.     Defendants have refused to give up possession of the Med Pay benefit despite being requested to do so.

64.     As a result of Defendants' conversion of Plaintiff's and the Class member's property, Plaintiff and the Class members sustained damages, including but not limited to the deprivation of a benefit for which they paid an optional and additional premium in that they could no longer use the Med Pay benefit for otherwise uncovered medical related services, and could no longer receive the Med Pay benefit as a direct cash payment.

65.     Defendants' conduct is outrageous, intentional, willful, wanton, and malicious, and otherwise shows a complete indifference to or conscious disregard of the rights of Plaintiff and the Class members such that punitive damages are appropriate and warranted.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), an award of economic and non-economic damages, attorneys' fees and costs, prejudgment interest, punitive damages, injunctive relief, and for such other relief as this Court may deem just and proper.

## COUNT III
### RESTITUTION/UNJUST ENRICHMENT
### (BROUGHT BY THE MRA CLASS AGAINST MRA & THE MERCY SUBCLASS AGAINST MERCY)

66. Plaintiff, individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

67. By their deceptive, misleading, and unlawful conduct alleged herein, Defendants unjustly received monetary benefits at the expense of Plaintiff and the Class members.

68. Defendants appreciate and/or have knowledge of these monetary benefits.

69. Defendants' acceptance and retention of these benefits under the circumstances make it inequitable for Defendants to retain the ill-gotten benefits that it received from Plaintiff and the Class members.

70. Defendants, by their deliberate conduct, have been unjustly enriched in a manner that warrants restitution in that they obtained more money for services than the commercial health insurance would have paid.

71. As a proximate consequence of Defendants' improper and unlawful conduct, Plaintiff and the Class members were injured in that they paid more money for services than their commercial health insurance would have paid.

72. Plaintiff, individually and on behalf of the Class, is entitled to and hereby seeks restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct, as well as interest thereon, reasonable costs, and reasonable attorneys' fees.

73. Plaintiff and the Class members have no adequate remedy at law against Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), an award of economic and non-economic damages, attorneys' fees and costs, prejudgment interest, injunctive relief, and for such other relief as this Court may deem just and proper.

**C<small>OUNT</small> IV**
**T<small>ORTIOUS</small> I<small>NTERFERENCE WITH</small> C<small>ONTRACT</small>**
**(B<small>ROUGHT BY THE</small> MRA C<small>LASS AGAINST</small> MRA & <small>THE</small> M<small>ERCY</small> S<small>UBCLASS AGAINST</small> M<small>ERCY</small>)**

74.     Plaintiff, individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

75.     Plaintiff and the Class members had a valid contract with their commercial health insurance carrier whereby Plaintiff and the Class members, either individually or as part of a group, paid a premium to the commercial health insurance carrier and that commercial health insurance carrier would pay for medical expenses incurred by Plaintiff and the Class members.

76.     At all times relevant herein, Defendants knew of the aforementioned contract.

77.     Defendants intentionally interfered with the contract by inducing or causing breach of the contract by not billing or collecting from the patient's commercial health insurance.

78.     Defendants had no justification for such intentional interference with the contract.

79.     Defendants' conduct caused damage to Plaintiff and the Class members in one or more of the following ways:

a.      Plaintiff's and the Class members' financial obligation remained unpaid and at a "full rate" while Defendants attempted collection from other sources;

b.      Plaintiff and the Class members were placed at risk of the medical bills not being paid at all;

c.     Plaintiff and the Class members were deprived of their right to a discounted billing rate;

d.     Plaintiff and the Class members were deprived of a benefit for which they paid an optional and additional premium in that they could no longer use the Med Pay benefit for otherwise uncovered medical related services, and could no longer receive the Med Pay benefit as a direct cash payment;

e.     The satisfaction of Plaintiff's and the Class members' medical bills was made contingent on them bringing and succeeding in a claim or lawsuit, and then even if the claim or lawsuit is successful paying money from their own settlement funds to Defendants for bills that should have already been satisfied; and

f.     Plaintiff and the Class members suffered economic damage and violations of their rights.

80.     The resulting damage to Plaintiff and the Class members was foreseeable to Defendants.

81.     Defendants directly benefited from, and were unjustly enriched by, the tortious interference alleged herein.

82.     Defendants' conduct is outrageous, intentional, willful, wanton, and malicious, and otherwise shows a complete indifference to or conscious disregard of the rights of Plaintiff and the Class members such that punitive damages are appropriate and warranted.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), an award of economic and non-economic damages, attorneys' fees and costs, prejudgment interest, punitive damages, injunctive relief, and for such other relief as this Court may deem just and proper.

<u>COUNT V</u>
VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT, § 407.010 *ET SEQ.*
(BROUGHT BY THE MRA CLASS AGAINST MRA & THE MERCY SUBCLASS AGAINST MERCY)

83.    Plaintiff, individually and on behalf of all others similarly situated, adopts and

incorporates by reference all allegations contained in the foregoing paragraphs as though fully

set forth herein.

84.    This cause of action is brought pursuant to the Missouri Merchandising Practices

Act, Mo. Ann. Stat. § 407.010 *et seq.* (the "MMPA"), to secure redress for the unlawful,

deceptive, and unfair trade practices perpetrated by Defendants against Plaintiff and the Class.

85.    The MMPA provides, in part, as follows:

> The act, use or employment by any person of any deception, fraud,
> false pretense, false promise, misrepresentation, unfair practice or
> the concealment, suppression, or omission of any material fact in
> connection with the sale or advertisement of any merchandise in
> trade or commerce. . . in and from the State of Missouri, is declared
> to be an unlawful practice. . . Any act, use or employment declared
> unlawful by this subsection violates this subsection whether
> committed before, during or after the sale, advertisement or
> solicitation.  Mo. Ann. Stat. § 407.020.

86.    Plaintiff and the Class members purchased medical services, and such services are

afforded protection under the MMPA pursuant to Mo. Ann. Stat. § 407.010(4).

87.    The purchase of the medical services was primarily for personal purposes.

88.    In connection with the sale of the medical services, Defendants acted in a manner

declared unlawful by Mo. Ann. Stat. § 407.020, in one or more of the following ways:

    a.    Defendants failed to provide Plaintiff and the Class with a fair and accurate
representation of their billing/collecting practices;

    b.    Defendants concealed the fact that Defendants did not intend to bill
Plaintiff's and the Class members' commercial health insurance for services
rendered;

20

    c.      Defendants concealed the fact that Defendants intended to place a Missouri medical lien for the full amount of the bill;

    d.      Defendants concealed the fact that Defendants intended to bill Plaintiff's and the Class members' auto insurer directly to seek payment through their Med Pay benefit.

89.    As a direct result of such conduct, Plaintiff and the Class members sustained damage in one or more of the following ways:

    a.      Plaintiff's and the Class members' financial obligation remained unpaid and at a "full rate" while Defendants attempted collection from other sources;

    b.      Plaintiff and the Class members were placed at risk of the medical bills not being paid at all;

    c.      Plaintiff and the Class members were deprived of their right to a discounted billing rate;

    d.      Plaintiff and the Class members were deprived of a benefit for which they paid an optional and additional premium in that they could no longer use the Med Pay benefit for otherwise uncovered medical related services, and could no longer receive the Med Pay benefit as a direct cash payment;

    e.      The satisfaction of Plaintiff's and the Class members' medical bills was made contingent on them bringing and succeeding in a claim or lawsuit, and then even if the claim or lawsuit is successful paying money from their own settlement funds to Defendants for bills that should have already been satisfied;

    f.      Plaintiff and the Class members suffered economic damage and violations of their rights.

90.    The unlawful, deceptive, and unfair acts of Defendants in violation of the MMPA were consistent, uniform, continuous, pervasive, and widespread during the Class period, and each such unlawful act constitutes a separate violation of the MMPA.

91.    Defendants' conduct is outrageous, intentional, willful, wanton, and malicious, and otherwise shows a complete indifference to or conscious disregard of the rights of Plaintiff and the Class members such that punitive damages are appropriate and warranted.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), an award of actual damages, incidental and consequential damages, punitive damages, attorneys' fees and costs, injunctive relief, any other applicable damages pursuant to the MMPA, and for such other relief as this Court may deem just and proper.

**COUNT VI**
**INJUNCTIVE RELIEF**
**(BROUGHT BY THE MRA CLASS AGAINST MRA & THE MERCY SUBCLASS AGAINST MERCY)**

92.     Plaintiff, individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

93.     Defendants have refused to act on grounds generally applicable to Plaintiff and Class members, thereby making final injunctive relief appropriate.

94.     Defendants' conduct, as more fully set forth herein, both in the past and through the present day, has demonstrated a willful disregard for the rights of consumers, and persists in their deceptive and unfair billing/collecting practices to the detriment of consumers across the State of Missouri.

95.     If Defendants are allowed to continue with these unlawful practices, Plaintiff and Class members will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Petition, unless injunctive relief is granted to stop Defendants' improper conduct.

96.     Plaintiff and Class members are entitled to an injunction requiring Defendants to cease their unfair and deceptive billing/collecting practices as alleged herein, including the effects thereof.

97.     Plaintiff and Class members seek a Court Order requiring Defendants to discontinue their practice of refusing to bill patients' commercial health insurance carriers; placing liens for the full amount of the bill upon any third party recovery of a patient who has commercial health insurance; billing patients' auto insurer directly to seek payment through their Med Pay benefit; and misleading patients regarding the billing/collecting process, the patient's relationship to Defendants, the patient's duties and responsibilities, and Defendants' intentions.

98.     Plaintiff and Class members also seek a Court Order requiring Defendants to cease their practice of sending written correspondence which misrepresents the billing/collecting process, the patient's relationship to Defendants, the patient's duties and responsibilities, and Defendants' intentions.  See Exhibit 2 attached hereto, which contains several misrepresentations.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, an award of the injunctive relief sought herein, attorneys' fees and costs, and for such other relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class members request the Court enter an order or judgment against Defendants as follows:

1.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Missouri Rule of Civil Procedure 52.08, and certification of the proposed Class and notice thereto to be paid by Defendants;

2.     Designating Plaintiff as a representative of the Class and her counsel as Class Counsel;

3.      Adjudging and decreeing that Defendants have engaged in the conduct alleged herein, entering Judgment in favor of Plaintiff and the Class, and against Defendants;

4.      Awarding Plaintiff and the Class the specific relief sought in each Count of this Petition, with pre- and post-judgment interest at the maximum allowable rate on any amounts awarded; and

5.      Granting any and all such other relief that this Court may deem just and proper under the circumstances.

HOLLORAN SCHWARTZ & GAERTNER LLP

/s/ Thomas E. Schwartz
Thomas E. Schwartz, #44504
Mark J. Gaertner, #50291
Justin D. Guerra, #59003
2000 So. 8th Street
St. Louis, Missouri 63104
314-772-8989 Phone
314-772-8990 Fax
tschwartz@holloranlaw.com
mgaertner@holloranlaw.com
jguerra@holloranlaw.com

COUNSEL FOR PLAINTIFF
& PROPOSED CLASS COUNSEL

Dated: October 3, 2016

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed via the Court's electronic filing system on this 3rd day of October, 2016, and thereby served upon all attorneys of record.

/s/Thomas E. Schwartz