UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA HOOPS, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. 4:16-cv-01543-AGF ) |
| MEDICAL REIMBURSEMENTS OF AMERICA, INC., et al., | ) ) ) |
|     Defendants. | ) ) |

**Memorandum in Support of**
**<u>Defendant Mercy Hospitals East Communities' Motion to Dismiss</u>**

**<u>Introduction</u>**

Plaintiff Cynthia Hoops was involved in an auto accident and chose to obtain medical treatment from Defendant Mercy Hospitals East Communities ("Mercy"). She allegedly had coverage for her treatment under her auto insurance policy with State Farm (the "State Farm Policy") and her health insurance policy with Blue Cross (the "Blue Cross Policy"). The State Farm Policy is the primary coverage.

Hoops has paid nothing for her treatment. Nevertheless, she complains that Mercy and Defendant Medical Reimbursements of America, Inc. ("MRA")—an alleged billing servicer for Mercy—chose to bill State Farm (the primary payor) instead of Blue Cross (the secondary payor) for her treatment and collected from State Farm more than what Blue Cross allegedly would have paid. With no legal or factual basis, she contends that Defendants were required under Mercy's provider agreement with Blue Cross (the "Provider Agreement") to seek payment only from Blue Cross and accept some unspecified "discounted rate" for her treatment. She apparently believes that if Defendants had billed Blue Cross, State Farm would have paid *her* for the

treatment that Mercy provided to her. She also complains that Defendants asserted a hospital lien upon her pending personal injury claims against the tortfeasor even though the lien has been released and Defendants never collected anything as a result of the lien.

In her amended complaint, Hoops alleges that because Defendants asserted a lien and billed State Farm instead of Blue Cross for her treatment, Mercy breached its Provider Agreement with Blue Cross (Count I) and Defendants "converted" her benefits under the State Farm Policy (Count II), were unjustly enriched (Count III), tortiously interfered with the Blue Cross Policy (Count IV), and violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.* ("MMPA") (Count V). For several reasons, the amended complaint fails to state any claim upon which relief may be granted and should be dismissed with prejudice.

*First*, under the Provider Agreement and Missouri law, Defendants had the right to bill State Farm instead of Blue Cross for Hoops' treatment, to collect from State Farm more than the Blue Cross discounted rate, and to assert a lien upon Hoops' personal injury claims.

*Second*, Hoops fails to allege any factual support or legal basis for her allegations that she has suffered any damages. Hoops has not paid anything for her treatment, she could never have obtained a double recovery from both State Farm and Blue Cross, and the mere assertion of the now-released hospital lien caused her no damage. Moreover, Defendants did not cause any purported damages because Hoops could have submitted her own claim to Blue Cross.

*Third,* Hoops' conversion claim (Count II) is also legally deficient because the money that State Farm allegedly paid directly to Defendants for Hoops' treatment is not a specific chattel upon which Hoops can base a conversion claim.

*Fourth*, Hoops' tortious interference claim (Count IV) is also legally deficient because Hoops does not allege that Blue Cross breached the Blue Cross Policy or that Defendants actively and affirmatively did anything to induce Blue Cross to breach the Blue Cross Policy.

*Fifth*, Hoops' claim for injunctive relief (Count VI) is also legally deficient because injunctive relief is a remedy, not an independent cause of action, and cannot stand as a separate cause of action. Moreover, the MMPA does not provide an independent private cause of action for equitable relief when, as here, the plaintiff has suffered no damages.

## Statement of Alleged Facts[1]

Hoops is a resident of St. Louis County, Missouri. (Am. Compl. ¶ 4). Mercy is a Missouri nonprofit corporation that provides health care services at various facilities, including Mercy Hospital St. Louis in Creve Coeur, Missouri. (Am. Compl. ¶ 6). MRA is a Tennessee corporation that allegedly performs certain billing and collection services for Mercy. (Am. Compl. ¶ 5).

On May 31, 2016, Hoops was involved in an auto accident and chose to be treated in the emergency room at Mercy Hospital St. Louis. (Am. Compl. ¶ 20). When she obtained treatment, her husband (Kevin Luna), acting as her representative, signed a document entitled "Consent and Agreement Physician Services and Hospital Services" that consented to Mercy's treatment of Hoops, assigned to Mercy all of her "rights under all insurance and benefit plan documents," and authorized "direct payment to" Mercy "of all insurance and plan benefit payments for services provided." (Ex. B, Declaration of Yvette Cotton ¶ 4; Ex. B-1).

---

[1] The Court should disregard paragraphs 7-19 of the amended complaint because none of the allegations in these paragraphs specifically apply to Hoops. Instead, these paragraphs purport to make only general, conclusory allegations about commercial health insurance, auto insurance medical payments coverage, Missouri hospital liens, how patients seek medical treatment, and how hospitals and other medical providers bill and collect for treatment.

Hoops allegedly had insurance coverage for her treatment at Mercy with State Farm under the State Farm Policy and with Blue Cross under the Blue Cross Policy. (Am. Compl. ¶¶ 21, 26). She does not allege that that the Blue Cross Policy instead of State Farm Policy is the primary coverage.[2]

Mercy's charges for Hoops' treatment were $6,519.54. (Am. Compl. ¶ 22). Defendants allegedly billed State Farm for her treatment, and State Farm allegedly paid $5,000 to Defendants, which allegedly exhausted the State Farm Policy. (Am. Compl. ¶¶ 27-28).

Hoops does not allege that she has paid anything for her treatment. Nevertheless, she complains that Defendants chose to bill State Farm instead of Blue Cross. She alleges that under Mercy's provider agreement with Blue Cross, Defendants were required to bill Blue Cross and accept a "discounted rate" for Mercy's charges. (Am. Compl. ¶¶ 12-13, 30, 51-52). She alleges that Defendants did not bill Blue Cross and that, consequently, Defendants deprived her of the discounted rate they were allegedly required under the Provider Agreement to accept for her treatment. (Am. Compl. ¶ 53). Hoops does not allege what this discounted rate would have been or whether she would have been responsible for paying Defendants all or part of this discounted rate as part of the deductible, co-pay, and coinsurance provisions of the Blue Cross Policy. She acknowledges that the Blue Cross Policy requires her to pay her medical providers for any deductible, co-pay, and coinsurance amounts. (Am. Compl. ¶ 9).

Hoops' allegations about the Provider Agreement are indisputably false, which is why she failed to attach a copy of it to the amended complaint. Notwithstanding her efforts to sidestep

---

[2] Hoops fails to attach the Blue Cross Policy or the State Farm Policy to her amended complaint.

this factual reality, Mercy submits the actual Provider Agreement as Exhibit A-1[3] to the Declaration of Lucille McLain (Exhibit A to Mercy's motion to dismiss), and the Court may consider the actual Provider Agreement in deciding Mercy's motion to dismiss because Hoops embraces and bases her claims on the Provider Agreement. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014); *Collins v. Veolia ES Indus. Servs., Inc.*, No. 4:15-CV-00743-AGF, 2015 WL 8663994, at *3 (E.D. Mo. Dec. 14, 2015).

Section 2.8.3 of the Provider Agreement states: "Except as provided in this section 2.7[4], this Agreement does not prohibit Provider from pursuing any available legal remedy, including, but not limited to, collecting from any insurance carrier providing coverage to a Covered Individual." (Ex. A-1). Section 2.8.1 states: "Except as expressly set forth herein, Provider agrees to accept as payment in full, in all circumstances, the applicable Company Rate whether such payment is in the form of a Cost Share, or a payment by Plan, or payment by another source. *If Plan is other than the primary payor, Provider is not precluded from accepting amounts in excess of the Company Rate from the primary payor....*" (Ex. A-1) (emphasis added).

On June 20, 2016, Hoops filed a lawsuit against Josephine Selinger in the Circuit Court of St. Louis County, Missouri, Case No. 16SL-CC-2268, for property damage and personal injuries resulting from the auto accident. Hoops' lawsuit against Selinger remains pending.

---

[3] The Provider Agreement is between Mercy and RightCHOICE Managed Care, Inc., which does business in Missouri under the name "Anthem Blue Cross and Blue Shield." (*See* Ex. A, Declaration of Lucille McLain, ¶ 3; Ex. C).

[4] The reference to section 2.7 is a typographical error. The reference should be to Section 2.8.

On July 7, 2016, MRA asserted a hospital lien under Mo. Rev. Stat. § 430.230[5] upon Hoops' personal injury claims related to the auto accident. (Am. Compl. ¶ 24 and Ex. 1). Defendants have received no payment on account of the lien, and MRA has withdrawn and released the lien.

## Argument

**I.   The Court should dismiss all counts of the amended complaint with prejudice.**

"To withstand a motion under Rule 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Grawitch v. Charter Comm., Inc.*, 750 F.3d 956, 960 (8th Cir. 2014) (citations and quotations omitted).

**A.   The Court should dismiss Counts I, II, III, IV, and V because Defendants had the right to bill State Farm instead of Blue Cross for Hoops' treatment, to collect from State Farm more than the Blue Cross discounted rate, and to assert a lien upon Hoops' personal injury claims.**

Hoops alleges that Defendants violated her "rights" without identifying any of these purported "rights." (Am. Compl. ¶¶ 19, 34). Contrary to Hoops' bald allegations, Defendants conduct was not "deceptive," "misleading," or "unlawful" because Defendants were entitled under the Provider Agreement and Missouri law to bill State Farm instead of Blue Cross for her

---

[5] Mo. Rev. Stat. § 430.230 provides: "Every ... hospital ... shall have a lien upon any and all claims, counterclaims, demands, suits, or rights of action of any person admitted to any hospital ... and receiving treatment, care or maintenance therein for any cause including any personal injury sustained by such person as the result of the negligence or wrongful act of another, which such injured person may have, assert or maintain against the person or persons causing such injury for damages on account of such injury, for the cost of such services, computed at reasonable rates not to exceed twenty-five dollars per day and the reasonable cost of necessary X-ray, laboratory, operating room and medication service, as such hospital, clinic, or other institution shall render such injured person on account of his conditions...."

treatment, to collect from State Farm more than the Blue Cross discounted rate, and to assert a lien upon her personal injury claims. The Court, therefore, should dismiss all of Hoops' claims.

### 1. Mercy's provider agreement with Blue Cross expressly permitted Defendants to bill State Farm and collect from State Farm more than the Blue Cross discounted rate.

Hoops' claims are based on the faulty premise that Mercy's provider agreement with Blue Cross somehow required Defendants to bill Blue Cross instead of State Farm for Hoops' treatment and to accept the Blue Cross discounted rate. Section 2.8.3 of the Provider Agreement states: "Except as provided in this section [2.8], this Agreement does not prohibit Provider from pursuing any available legal remedy, including, but not limited to, collecting from any insurance carrier providing coverage to a Covered Individual." (Ex. A-1). State Farm is an "insurance carrier providing coverage to" Hoops, and nothing in Section 2.8 precluded Mercy from billing State Farm for Hoops' treatment. Thus, the Provider Agreement expressly permitted Defendants to bill and collect from State Farm instead of Blue Cross.

Moreover, Section 2.8.1 of the Provider Agreement states: "If Plan is other than the primary payor, Provider is not precluded from accepting amounts in excess of the Company Rate from the primary payor." (Ex. A-1). State Farm's payment to Defendants confirms that State Farm, not Blue Cross, is the primary payor.[6] In turn, the Provider Agreement expressly provides that: (a) any discounted rate that *Blue Cross* might have been entitled to pay (called the

---

[6] While Hoops chose not to attach her State Farm Policy to the amended complaint, the official State Farm auto policy that is on file with and approved by the Missouri Department of Insurance is clear that the medical payments coverage in the State Farm auto policy is primary coverage and is not secondary to or coordinated with the insured's health insurance. (*See* Exhibit D, available at http://insurance.mo.gov/consumers/auto/documents/9825A.pdf, last visited on October 14, 2016).

"Company Rate" in the Provider Agreement) does not apply to *State Farm*; and (b) Defendants were permitted to accept more than the Blue Cross discounted rate from State Farm.

The Court is not required to defer to Hoops' blatant mischaracterization of the Provider Agreement, but must examine the actual language of the Provider Agreement. "Where, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint." *Gorog*, 760 F.3d at 792. The actual language of the Provider Agreement expressly permitted Defendants to bill State Farm and collect from State Farm more than the Blue Cross discounted rate.

### 2. Defendants were entitled under Missouri law to bill State Farm and collect from State Farm more than the Blue Cross discounted rate.

Defendants were also entitled under Missouri law to bill State Farm and collect from State Farm more than the Blue Cross discounted rate. Defendants properly billed State Farm because State Farm is the primary payor for Hoops' treatment and Hoops has not alleged any facts establishing that Blue Cross was anything other than a secondary payor. *See, e.g., Research Med. Ctr. v. Safir*, 616 S.W.2d 553 (Mo. Ct. App. 1981) (health insurer that was secondary payor had no liability for patient's treatment). But assuming, *arguendo*, that both Blue Cross and State Farm were primary payors, Defendants could still choose to bill and collect from State Farm instead of Blue Cross because when, as here, there is concurrent insurance coverage, either insurer may be pursued. *Heartland Payment Systems, L.L.C. v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 232 (Mo. Ct. App. 2006); *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, No. 4:04-CV-178 CEJ, 2012 WL 5948900, at *4 (E.D. Mo. Nov. 28, 2012), *aff'd in part, rev'd in part*, 737 F.3d 1188 (8th Cir. 2013); *King v. ProMedica Health Sys., Inc.*, 955 N.E.2d 348 (Ohio 2011) (health care provider was entitled to bill patient's auto insurer instead of patient's health insurer).

Hoops falsely alleges that she did not authorize Defendants to bill State Farm. (Am. Compl. ¶ 7). But as a condition of receiving treatment at Mercy, she assigned all insurance benefits to Mercy, including the insurance benefits under the State Farm Policy. (Ex. B-1). Because she assigned her benefits, Defendants were entitled to bill and receive payment from State Farm. Mo. Rev. Stat. § 376.427.2 ("Upon receipt of an assignment of benefits made by the insured to a provider, the insurer shall issue the instrument of payment for a claim for payment of health care services in the name of the provider."); *Marvin v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 712 (Mo. Ct. App. 1995) (State Farm required to pay medical provider instead of insured because insured assigned rights to auto policy medical benefits to medical provider).

The purpose of the State Farm Policy is to ensure that medical providers (such as Mercy) are paid for medical treatment that they furnish to Hoops, not for Hoops to profit from her injuries and medical treatment. Indeed, Hoops concedes that the State Farm Policy "provides payment to the insured *or the insured's medical providers* when the insured is in an auto accident." (Am. Compl. ¶ 9) (emphasis added). "Denial of [Hoops'] assignment of the hospital and medical benefits to [Mercy] would frustrate the entire design for which the insurance coverage was intended." *Greater Kansas City Baptist & Cmty. Hosp. Ass'n, Inc. v. Businessmen's Assur. Co.*, 585 S.W.2d 118, 119 (Mo. Ct. App. 1979).

Notwithstanding the Provider Agreement, Defendants could accept more than the Blue Cross discounted rate from State Farm. *See Laboy v. Grange Indemn. Ins. Co.*, 41 N.E.3d 1224, 1229 (Ohio 2015) (auto insurer had no right to invoke health insurer's discounted rate); *Hayberg v. Robinson Mem. Hosp. Found.*, 995 N.E.2d 888, 893 (Ohio Ct. App. 2013) (hospital was not required to afford to patient's auto insurer the discount that hospital would have afforded to patient's health insurer). The Blue Cross discounted rate in the Provider Agreement only applies

to Blue Cross. State Farm did not, and could not, invoke the Blue Cross discounted rate because it is not a party to the Provider Agreement. *See, e.g., Prickett v. Lucy Lee Hosp., Inc.*, 986 S.W.2d 947, 948 (Mo. Ct. App. 1999) ("[O]ne not a party to a contract cannot enforce the contractual terms upon one of the parties to the contract.").

        **3.**    **Defendants were entitled under the Provider Agreement and Missouri law to assert a hospital lien upon Hoops' personal injury claims.**

Any issue concerning MRA's assertion of a hospital lien upon Hoops' personal injury claims is moot given that Defendants have received no payment on account of the lien, and MRA has since withdrawn and released the lien. Nevertheless, the assertion of the hospital lien was proper under the Provider Agreement and Missouri law.

Section 430.230, Mo. Rev. Stat., provides that Mercy "shall have a lien" upon Hoops' personal injury claims. Section 2.8.3 of the Provider Agreement states: "Except as provided in this section [2.8], this Agreement does not prohibit Provider from pursuing any available legal remedy...." (Ex. A-1). A hospital lien under Section 430.230 is an "available legal remedy," and nothing in the Provider Agreement prohibits Mercy from asserting such a lien. Indeed, Sections 2.8.1 and 2.8.3 acknowledge Mercy's right to pursue anyone whose liability for Hoops' treatment is primary to Blue Cross' liability. Moreover, Section 2.8.2 of the Provider Agreement expressly authorizes Mercy to pursue Hoops for any amounts owed by Hoops—such as her deductibles, copays, and coinsurance (called the "Cost Shares" in the Provider Agreement)—and Mercy could properly assert a statutory lien to secure payment of those amounts owed by Hoops.

\* \* \*

In sum, Defendants had the right to bill State Farm instead of Blue Cross for Hoops' treatment, to collect from State Farm more than the Blue Cross discounted rate, and to assert a

lien upon Hoops' personal injury claims. Accordingly, all of Hoops' claims are legally deficient and should be dismissed with prejudice.

> **B.    The Court should dismiss Counts I, II, III, IV, and V because Hoops fails to allege any factual support or legal basis for her allegations that she has suffered any damages or that Defendants caused any such damages.**

In addition, all of Hoops' claims are legally deficient and should be dismissed because she pleads no factual support for her allegations that she has incurred any damages, let alone that Defendants caused any such damages. "In the absence of factual support for the plaintiffs' allegation of damages, the plaintiffs' complaint is insufficient to withstand a motion to dismiss under Rule 12(b)(6)." *Grawitch v. Charter Comm., Inc.*, 750 F.3d 956, 960 (8th Cir. 2014)

An ascertainable loss (damages) as a result of a breach of contract or violation of the MMPA (causation) is an essential element of Hoop's breach of contract and MMPA claims: "Under Missouri law, the plaintiffs must prove that they suffered pecuniary loss in order to prevail on their MMPA claim and breach of contract claim." *Grawitch*, 750 F.3d at 960 (citations omitted); *see also Freeman Health System v. Wass*, 124 S.W.3d 504, 508 (Mo. Ct. App. 2004); *Roberts v. BJC Health System*, 391 S.W.3d 433, 438 (Mo. 2013) (en banc). Section 407.025.1 of the MMPA states in pertinent part: "Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby *suffers an ascertainable loss of money or property*, real or personal, *as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020*, may bring a private civil action ... to recover actual damages." (emphasis added). Under Section 407.025.1, a plaintiff purporting to assert a claim under the MMPA "must prove that he has: (1) purchased [merchandise (including medical goods and services)]; (2) for personal, family, or household purposes; and (3) *suffered an ascertainable loss of money or property*; (4) *as a result of an act declared unlawful by section*

407.020." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007) (en banc) (emphasis added). Damages and causation are also essential elements of Hoops' other claims. *Roberts* 391 S.W.3d at 438; *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 17 (Mo. Ct. App. 2002) ("pecuniary loss is an essential element of an action sounding in interference with contracts or business"); *Binkley v. American Equity Mortgage, Inc.*, 447 S.W.3d 194, 199 (Mo. 2014) (en banc) (plaintiffs had no claim for unjust enrichment because they paid nothing for the preparation of legal documents and, thus, conferred no benefit to the defendant).

### 1. Hoops has suffered no damages as she had not paid Defendants anything for her treatment.

Hoops has suffered no damages as she does not allege that she has paid anything for her treatment. Her own allegations confirm that she has incurred no damages because she alleges that State Farm paid Defendants for her treatment. (Am. Compl. ¶ 28).

When, as here, a patient has paid nothing for her treatment, she has no damages and, thus, she has no claim under the MMPA or any other legal theory. *Wass*, 124 S.W.3d 504. Hoops does not allege that she has paid more than what she owed for her treatment; indeed, she has paid nothing. Accordingly, she has no damages and, thus, he has no claim under the MMPA or any other legal theory. *Wass*, 124 S.W.3d 504; *Cregan v. Mortgage One Corp.*, No. 4:16 CV 387 RWS, 2016 WL 3072395, at *4 (E.D. Mo. June 1, 2016) (dismissing MMPA claim because plaintiffs never alleged they paid defendants more than they owed).

MRA's assertion of a lien on Hoops' personal injury claims against Selinger caused no damage to Hoops because Defendants have never received any payment on account of the lien. A lien only affects a settlement or judgment, and there has been no settlement or judgment in Hoops' pending lawsuit against Selinger. Defendants will never receive any payment on account of the lien because MRA has released the lien.

Hoops has no damages based on State Farm's alleged payment to Defendants. *Roberts*, 391 S.W.3d 433 (insured had no damages and, thus, no claim against hospitals based on hospitals' alleged overcharging because hospitals were paid by patients' insurers and patients paid nothing to the hospitals). Hoops "cannot proceed with claims to recover money that incontrovertibly [she] never lost." *Id.* at 439. If Defendants improperly billed and received payment from State Farm, which Defendants deny, any potential claim to recover the payment belongs to State Farm, not Hoops. *Id.* at 440 ("Plaintiffs never had legal title to any claims related to their insurers' payments for alleged overcharges").[7]

Without alleging any factual or legal basis, Hoops speculates that if Defendants had billed Blue Cross, Blue Cross might have paid Defendants for her treatment at Mercy and, in turn, State Farm might have either: (a) paid her instead of Defendants for her treatment at Mercy; or (b) paid for some other unspecified accident-related medical treatment that was not covered by Blue Cross. (Am. Compl. ¶ 32). Hoops' contention lacks facial plausibility for several reasons.

First, Hoops concedes that health insurers often pay nothing on claims when other insurers or tortfeasors are primarily liable, *see, e.g.,* Am. Compl. ¶ 14, yet she fails to allege that Blue Cross is the primary payor even though she has her Blue Cross Policy and is charged with knowledge of its terms. The fact that State Farm allegedly paid Defendants confirms that State Farm is the primary payor and is not a secondary payor to Blue Cross. As the secondary payor, Blue Cross would have paid nothing for Hoops' treatment because State Farm, the primary payor, paid for her treatment. *See, e.g., Research Med. Ctr. v. Safir*, 616 S.W.2d 553 (Mo. Ct. App. 1981).

---

[7] State Farm cannot seek reimbursement from Hoops for its payment to Defendants, and, consequently, Hoops has no potential liability to State Farm. *Benton House, LLC v. Cook & Younts Ins., Inc.*, 249 S.W.3d 878, 881 (Mo. Ct. App. 2008).

Second, Hoops fails to allege sufficient facts that Blue Cross would have paid anything for her treatment even if it were a primary payor. She concedes: (a) that the Blue Cross Policy has deductibles, copays, and coinsurance that she must pay to her medical providers; and (b) that her medical providers may seek payment of these amounts from State Farm. (Am. Compl. ¶ 9). Yet, Hoops fails to allege any facts as how much Blue Cross would have paid for her treatment or how much she would have owed to Mercy if a claim for her treatment had been submitted to and processed by Blue Cross. Absent such allegations, Hoops fails to sufficiently allege any damages, and her claims must be dismissed. *See, e.g., Cregan*, 2016 WL 3072395, at *4.

Third, even if Blue Cross had fully paid Defendants, Hoops would not have been entitled to payment from State Farm for Mercy's treatment of her, and she does not identify any other medical treatment from her auto accident that State Farm would have paid for. Under Missouri law, when there is concurrent insurance coverage, "an insured's right of recovery is restricted to the actual amount of its loss" and the insured cannot make a double recovery from both insurers. *Heartland Payment Systems, L.L.C. v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 232 (Mo. Ct. App. 2006); *see also Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, No. 4:04-CV-178 CEJ, 2012 WL 5948900, at *4 (E.D. Mo. Nov. 28, 2012) ("Had plaintiffs received no coverage from either insurer, plaintiffs could have sought the full amount of loss from each insurer and evidence of the concurrent coverage offered for the purpose of reducing damages may well have been excluded. However, since Travelers did not contest coverage and made payments to plaintiffs prior to the filing of this lawsuit, plaintiffs were not entitled to recover for those amounts already paid by Travelers for the same loss."), *aff'd in part, rev'd in part*, 737 F.3d 1188 (8th Cir. 2013); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296, 305 (1998) ("The fact that several insurance policies may cover the same risk does not increase the insured's right to

recover for the loss, or give the insured the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss.").

In sum, Hoops has no viable claims because her insurance paid for her treatment and she has paid nothing. The Court should dismiss all counts of the amended complaint with prejudice.

### 2. Defendants did not cause Hoops to incur any damages because Hoops could have submitted her own claim to Blue Cross for her treatment.

Moreover, as a matter of law, Defendants did not cause Hoops to incur any damages. While Hoops complains that Defendants did not bill Blue Cross for her treatment, Hoops could have submitted her own claim to Blue Cross. If she had done so, Blue Cross would have processed her claim the same as if Defendants had billed Blue Cross, and Hoops would have received whatever benefits of the Blue Cross Policy she has allegedly been deprived of. Consequently, she has no viable claim against Defendants. *See Williams v. HSBC Bank USA NA*, 467 S.W.3d 836, 843 (Mo. Ct. App. 2015) (claim was deficient because defendant's alleged violations of MMPA did not cause the plaintiffs' loss).

### C. The Court should dismiss Hoops' conversion claim (Count II) because the money that State Farm allegedly paid directly to Defendants is not a specific chattel upon which Hoops can base a conversion claim.

In Count II, Hoops alleges that Defendants "converted" the medical payments benefits in the State Farm Policy by billing and collecting from State Farm without her consent. Mercy had Hoops' consent to bill and collect from State Farm because Hoops assigned her insurance benefits to Mercy as a condition of treatment. (Ex. B-1). But even if she had made no such assignment, Count II is legally deficient because the money that State Farm allegedly paid directly to Defendants is not a specific chattel upon which Hoops can base a conversion claim.

> Conversion is the unauthorized assumption of the rights of ownership over the personal property of another to the exclusion of the owner's rights. A general debt will not give rise to a cause of action in conversion. Generally, an action for

- 15 -

> conversion lies only for a specific chattel which has been wrongfully converted, thus a claim for money may not be asserted in conversion.
>
> While the usual rule is that conversion is not the proper remedy to recover an ordinary debt, money is the appropriate subject of conversion only when it can be described or identified as a specific chattel. Specific checks, drafts or notes will support a cause of action for conversion where they can be described or identified as a specific chattel.

*Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 415 (Mo. Ct. App. 2000) (quotations and citations omitted). "Money is the subject of conversion only when it can be described or identified as a specific chattel," *Breece v. Jett*, 556 S.W.2d 696, 710 (Mo. Ct. App. 1977), and "a cause of action in conversion does not lie for money represented by a general debt," *Capitol Indem. Corp. v. Citizens Nat. Bank of Fort Scott, N.A.*, 8 S.W.3d 893, 900 (Mo. Ct. App. 2000) (quotation omitted).

The State Farm Policy is not a specific chattel owned by Hoops, but is merely an intangible contractual promise by State Farm to pay money under certain conditions. Moreover, Hoops was not even entitled to receive any payments made by State Farm as she concedes that the State Farm Policy "provides payment to the insured *or the insured's medical providers* when the insured is in an auto accident." (Am. Compl. ¶ 9) (emphasis added). When Hoops received treatment at Mercy, she assigned her insurance benefits to Mercy (Ex. B-1), and that assignment entitled Defendants to bill State Farm for her treatment. Mo. Rev. Stat. § 376.427.2.

Hoops does not allege the existence of any check or other form of payment that State Farm issued *to her* that Defendants somehow converted. She cannot make any such allegation because State Farm allegedly issued its payment directly to Defendants, not to her. As a result, there is no specific chattel that Defendants could have wrongfully converted.

Even if State Farm should have paid Hoops instead of Defendants, the money that State Farm allegedly owed to Hoops, but paid to Defendants, cannot be identified as a specific chattel

- 16 -

for purposes of a conversion claim. *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015) (dismissing conversion claim because "the money allegedly owed to Plaintiffs under the Plan cannot be identified as a specific chattel"). The Court should dismiss Count II.

> D. **The Court should dismiss Hoops' tortious interference claim (Count IV) because she does not allege that Blue Cross breached the Blue Cross Policy or that Defendants actively and affirmatively did anything to induce Blue Cross to breach the Blue Cross Policy.**

In Count IV, Hoops alleges that Defendants tortiously interfered with the Blue Cross Policy by not submitting a claim to Blue Cross for her treatment. A claim for tortious interference requires proof of: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) *intentional interference by the defendant inducing or causing a breach of the contract or relationship*; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 614 (Mo. 2006) (en banc) (emphasis added).

Hoops' tortious interference claim is legally deficient for two reasons. First, she does not allege, and cannot allege, that Blue Cross has breached the Blue Cross Policy. To the contrary, Hoops alleges that no claim for her treatment has ever been submitted to Blue Cross. Absent the submission of a claim to Blue Cross and its denial of that claim, Blue Cross cannot have breached the Blue Cross Policy. Thus, Hoops has no claim for tortious interference. *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.*, 523 F.2d 833, 836 (8th Cir. 1975) ("Since under the claim alleged in Count III Decker-Ruhl could prove no breach of its contract with Ford, it cannot maintain a cause of action against FMCC for tortious interference.").

Second, Hoops' tortious interference claim is legally deficient because "[t]he person claiming tortious interference has the burden of proving that the other party actively and affirmatively took steps to induce the breach," *Am. Bank of Princeton v. Stiles*, 731 S.W.2d 332,

344 (Mo. Ct. App. 1987), and Hoops does not allege that Defendants actively and affirmatively did anything to induce Blue Cross to breach the Blue Cross Policy. Instead, Hoops alleges that Defendants did nothing with respect to Blue Cross: "Defendants intentionally interfered with [the Blue Cross Policy] … by not billing or collecting from [Blue Cross]." (Am. Compl. ¶ 77). "Allegations of inaction do not satisfy the requirement that a plaintiff plead affirmative, intentional acts of interference." *Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 183 (D.D.C. 2015); *see also Sanitec Indus. Inc. v. Micro-Waste Corp.*, No. CIV.A. H-04-3066, 2006 WL 1544529, at *6 (S.D. Tex. June 2, 2006) ("[I]naction as a matter of law is not tortious interference."); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1024 (9th Cir. 2000) ("We are aware of no authority for the counter-intuitive proposition that nonfeasance can amount to interference."). Thus, the Court should dismiss Count IV with prejudice. *Stiles*, 731 S.W.2d at 343-44 (defendants' tortious interference counterclaim failed because plaintiff had no contact with prospective purchaser who terminated business expectancy with defendants).

  E. **The Court should dismiss Hoops' injunctive relief claim (Count VI) because injunctive relief is a remedy, not an independent cause of action, and Hoops has suffered no damages.**

In Count VI, Hoops purports to assert an independent claim for injunctive relief. "Injunctive relief, however, is a remedy, not an independent cause of action" and "this remedy cannot stand as [a] separate cause[ ] of action." *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059–60 (E.D. Mo. 2010) (dismissing claim for injunctive relief). Hoops apparently intends to base her claim for injunctive relief on her MMPA claim, but the MMPA does not provide an independent private cause of action for equitable relief when, as here, the plaintiff has suffered no damages. *Wass*, 124 S.W.3d at 509. Thus, the Court should dismiss Count VI.

## II.     The Court should strike Hoops' request for attorney's fees.

If the Court does not dismiss all counts of the amended complaint, it should strike Hoops' request for attorney's fees. "Missouri follows the American Rule on attorneys' fees, which provides that each party to litigation must pay its own litigation expenses unless a statute specifically authorizes recovery of attorneys' fees or a contract provides for them." *Monarch Fire Prot. Dist. of St. Louis Cty., Missouri v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d 633, 637 (8th Cir. 2011). Hoops does not allege any statute or contract—and there is none—that authorizes her to recover attorney's fees for her claims for breach of contract (Count I), conversion (Count II), unjust enrichment (Count III), or tortious interference (Count IV).

## III.    The Court should strike Hoops' class action allegations.

In addition, if the Court does not dismiss all counts of the amended complaint, it should strike Hoops' class action allegations. In her amended complaint, filed with this Court, Hoops purports to "bring[ ] this class action on behalf of herself and all others similarly situated as Class Members pursuant to Missouri Rule of Civil Procedure 52.08." (Am. Compl. ¶ 36). Class actions in federal court are governed by Federal Rule of Civil Procedure 23, not Missouri Rule 52.08. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

While Hoops has not yet filed any motion for class certification, it is apparent from the face of the amended complaint that no class can be certified. Based on Hoops' allegations about her own situation, each putative class member's claims would depend on numerous factual issues that could only be determined on an individual basis, including, but not limited to: (1) the terms of the member's health insurance; (2) the terms of the member's auto insurance; (3) which insurance is primary coverage; (4) whether Mercy has a provider agreement with the member's health insurer and, if so, the terms of that provider agreement (including any discount rates and

Mercy's rights to pursue the member's auto insurance and assert a hospital lien); (5) whether the member made an assignment of insurance benefits to Mercy; (6) the nature of the medical care received by the member; (7) whether the member's treatment is covered by the health insurer; and (8) the deductibles, copays, and coinsurance that the member is responsible for.

## Conclusion

The Court should dismiss all counts of the amended complaint with prejudice.

Respectfully submitted,

THOMPSON COBURN LLP

By /s/ Allen D. Allred
Allen D. Allred, #26367
Jeffrey R. Fink, #44963
Jeremiah W. Nixon, #67148
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6000
314-552-7000 (Fax)
aallred@thompsoncoburn.com
jfink@thompsoncoburn.com
jnixon@thompsoncoburn.com

Attorneys for Defendant
Mercy Hospitals East Communities

## Certificate of Service

I hereby certify that on October 14, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/Allen D. Allred