UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA HOOPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:16-cv-01543-AGF |
| | ) |
| MEDICAL REIMBURSEMENTS OF | ) |
| AMERICA, INC., and MERCY | ) |
| HOSPITALS EAST COMMUNITIES, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Mercy Hospitals East Communities' ("Mercy") motion for reconsideration. In its March 2, 2018 Memorandum and Order (the "Memorandum and Order"), ECF No. 133, the Court granted summary judgment in favor of Defendants on all of Plaintiff's claims except for two breach of contract claims asserted against Mercy. These two claims arose out of the way that Mercy attempted to collect money owed for medical treatment provided to Plaintiff for injuries she suffered after an automobile accident. Specifically, Plaintiff claimed that Mercy breached a "hold harmless" provision contained in Mercy's contract with Plaintiff's health insurer by asserting a lien on Plaintiff's tort claim against the other driver involved in the accident. Plaintiff admittedly sustained no actual damages as a result of the lien because Mercy released the lien before any settlement or judgment was reached on the tort claim. However, the Court allowed Plaintiff to proceed to trial on the contract claims for nominal damages.

Mercy now seeks reconsideration of the Court's decision on a theory not raised in its summary judgment briefs, namely, that the hold harmless provision was not triggered until Plaintiff's health insurer determined that Plaintiff's medical treatment was covered under her health insurance plan, and by that time, the lien had already been released. Thus, Mercy argues that, at the time the lien was asserted, it was lawful under the relevant contracts. Plaintiff opposes Mercy's motion, arguing that the hold harmless provision was triggered the moment that Plaintiff sought treatment at Mercy's facility. The Court heard oral argument on Mercy's motion on December 20, 2018. After fully reviewing the record and the parties' arguments, the Court will grant Mercy's motion.

## **BACKGROUND**

The facts are set out in the Memorandum and Order and will not be recounted in detail here. As relevant to this motion, the record establishes the following. Plaintiff's automobile accident and resulting injuries took place on May 31, 2016, and she was treated in the emergency room that day at a Mercy hospital in Missouri. The medical treatment resulted in charges totaling $6,519.54.

When she was admitted to the hospital, Plaintiff's husband signed on Plaintiff's behalf a contract with Mercy entitled "Consent and Agreement — Physician Services and Hospital Services" ("Consent and Agreement"). The Consent and Agreement provided that Plaintiff consented to the services performed at Mercy, and that Plaintiff agreed to pay for goods and services provided at the rates disclosed by Mercy "unless [she was] entitled to pay a different amount under [her] health insurance plan . . . ." ECF No. 82-2.

At all relevant times, Mercy had a Network Agreement with RightChoice Managed Care, Inc., the BlueCrossBlueShield ("BCBS") entity in Missouri. The Network Agreement applied to other BCBS affiliates, including CareFirst of Maryland ("CareFirst"), the entity through which Plaintiff had group health insurance coverage. The Network Agreement included a Plan Compensation Schedule, which set forth a discounted rate for covered services charged by Mercy to BCBS affiliates like CareFirst.

Section 2.8 of the Network Agreement was titled "Payment in Full and Hold Harmless," and was divided into three subsections. The applicable subsection, Section 2.8.2 (the "Hold Harmless provision") provided, in relevant part:

> [Mercy] agrees that in no event, including but not limited to, nonpayment by [CareFirst], insolvency of [CareFirst], or breach of this Agreement, shall [Mercy], or any person acting on behalf of [Mercy], bill, charge, collect a deposit from, seek compensation from, or have any other recourse against a Covered Individual, or a person acting on the Covered Individual's behalf, for Covered Services provided pursuant to this Agreement. This section does not prohibit [Mercy] from collecting reimbursement for the following from the Covered Individual:
>
> 2,8.2.1. Cost Shares,[1] if applicable;
>
> 2.8.2.2. Health Services that are not Covered Services . . . ;
>
> 2.8.2.3. Any reduction in or denial of payment as a result of the Covered Individual's failure to comply with his/her utilization management program.

---

[1] The Network Agreement defined "Cost Share" as "an amount which a Covered Individual is required to pay under the terms of the applicable Health Benefit Plan. Such payment may be referred to as an allowance, coinsurance, copayment, deductible, or other Covered Individual Payment responsibility . . . . The Cost Share amount is determined by the Plan." ECF No. 82-1 at 4.

> 2.8.2.4. Health Services which are not payable in the Covered Individual's Health Benefit Plan because [Mercy] does not participate in the applicable Plan Program. . . .

Section 2.8.3 provided, in relevant part:

> Except as provided in this section . . . , this Agreement does not prohibit [Mercy] from pursuing any available legal remedy, including, but not limited to, collecting from any insurance carrier providing coverage to a Covered Individual.

ECF No. 82-1 at 9.

On June 8, 2016, Mercy billed Plaintiff's automobile insurance policy with State Farm for the total $6,519.54.[2] On July 7, 2016, Mercy's billing agent (and a former Defendant in this case), Medical Reimbursements of America, Inc. ("MRA") placed a lien for $6,519.54 on the tort claim that Plaintiff asserted against the other driver involved in the automobile accident. MRA asserted in its summary judgment briefing that, at the time it placed the lien, it was unaware that Plaintiff had commercial health insurance coverage, and that it would not have placed the lien had it known Plaintiff had such coverage.[3] On July 18, 2016, Mercy received State Farm's $5,000 payment on the claim.[4]

---

[2] Plaintiff asserted numerous claims based on Mercy's decision to bill State Farm first and, as a result, collecting more than the discounted rate set forth in Mercy's Network Agreement with CareFirst. But the Court granted summary judgment in favor of Defendants on those claims.

[3] Plaintiff disputed that MRA was not aware of her health insurance coverage as of the date of the lien.

[4] Although the Memorandum & Order stated that State Farm made its payment on June 28, 2016, the parties clarified at oral argument on the current motion that State Farm's check was dated June 28, 2016, but the payment was not received by Mercy until July 18, 2016. The July 18, 2016, payment date is reflected in the summary judgment record and

On September 15, 2016, MRA released the lien it had placed on Plaintiff's tort claim. The tort claim remained pending at that time, and Mercy did not obtain any money as a result of the lien.

On September 21, 2016, Mercy billed Plaintiff's CareFirst health insurance plan, noting that $5,000 had already been paid on the claim. In early October 2016,[5] CareFirst processed the claim and determined that it owed $836 on the claim, and that Plaintiff was responsible for $209 as a Cost Share, pursuant to the discounted rates set forth in the Network Agreement. CareFirst explained this determination in an Explanation of Benefits, and CareFirst thereafter issued a payment to Mercy of $836. On October 2, 2016, Mercy billed Plaintiff for $209, which Plaintiff paid in full on October 14, 2016.

As relevant here, Plaintiff claimed in this lawsuit that Mercy's assertion of the lien for the full amount of Mercy's charges breached the Hold Harmless provision of the Network Agreement,[6] and by extension, the Consent and Agreement (because Plaintiff was entitled to pay a lesser amount—limited to the $209 Cost Share—under her health insurance plan by virtue of the Hold Harmless provision).

In its earlier summary judgment briefing, Mercy argued that Plaintiff's contract claims related to the hospital lien failed because Plaintiff suffered no actual damages.

---

is not disputed by Plaintiff.

[5] The parties could not identify the exact date on which CareFirst processed the claim, but it is undisputed that it was in early October 2016.

[6] The Court found that Plaintiff was a third-party beneficiary to the Hold Harmless provision of the Network Agreement, and Mercy does not dispute that finding for the purpose of this motion.

Mercy also argued that the lien was properly asserted because Missouri's hospital lien statute, Mo. Rev. Stat. § 430.230, permits the assertion of a lien by a hospital so long as a patient's debt on the hospital bill remains outstanding. Specifically, Mercy argued that, pursuant to Hold Harmless provision, Mercy was authorized to charge Plaintiff for Cost Shares, that the $209 Cost Share in this case "was an outstanding debt . . . for which Mercy was entitled to a hospital lien," and thus, Plaintiff's "debt to Mercy remained outstanding, and Defendants had the right to maintain the lien, until she paid Mercy the co-insurance due from her ($209) on October 14, 2016." ECF No. 81 at 13-14. Mercy argued that because it released the lien a month before Plaintiff paid the $209 Cost Share, Plaintiff had no viable claim based on the lien.

In the Memorandum and Order, the Court held that although Plaintiff admittedly suffered no actual damages as a result of the lien, Missouri law permitted Plaintiff to proceed to trial on her breach of contract claims for nominal damages. The Court also rejected Mercy's argument that it was entitled to maintain a lien until Plaintiff paid the Cost Share she owed because the amount of the lien here was not limited to the Cost Share. Therefore, the Court denied Mercy's motion for summary judgment on the contract claims to the extent those claims arose from Mercy's assertion of the lien.

Now, in its motion for reconsideration, Mercy argues that it had the right to maintain a lien for its full charges until early October 2016, when CareFirst confirmed that Plaintiff was in fact covered under her health insurance plan for her treatment at Mercy, and CareFirst determined the respective amounts owed by CareFirst and Plaintiff under

6

that plan. In support of this argument, Mercy draws the Court's attention to the Network Agreement's definition of a "Covered Individual," as that term is used in the Hold Harmless provision.

Article I of the Network Agreement defines a "Covered Individual" as "any individual who is eligible, *as determined by [CareFirst]*, at the time services are rendered to receive Covered Services under a Health Benefit Plan." ECF No. 82-1 at 3. "Covered Services," in turn, is defined as "Medically Necessary Health Services, *as determined by [CareFirst]* and described in the applicable Health Benefit Plan, for which a Covered Individual is eligible for coverage." *Id.* (emphasis added).

Mercy thus argues that Plaintiff did not become a "Covered Individual" protected by the Hold Harmless provision until CareFirst's October 2016 coverage determination, and likewise, for purposes of the Consent and Agreement, was not "entitled to pay a different amount" under her health insurance plan until that date. Mercy contends that, before CareFirst made its coverage determination, Mercy could not have known whether Plaintiff's treatment was in fact covered by her CareFirst health insurance plan, and, if so, how much Plaintiff owed under that plan. As such, Mercy argues that it was entitled to maintain a lien for its full charges at that time. And because Mercy had already released its lien by the time that CareFirst made its coverage determination (and, indeed, before it billed CareFirst), Mercy argues that it did not breach the Network Agreement or, by extension, the Consent and Agreement.

In response, Plaintiff argues that she was a Covered Individual and the services she received from Mercy were Covered Services on the day that she received treatment at Mercy. Plaintiff argues that Mercy's interpretation would render the Hold Harmless provision meaningless because it would allow Mercy to simply delay billing a health insurance company in order to pursue an insured for the full amount of any hospital charges. Plaintiff notes that she presented a valid driver's license and her health insurance card to Mercy on the day that she received treatment, and as such, Mercy could have immediately confirmed with CareFirst that Plaintiff's treatment was indeed covered. Plaintiff also notes that MRA admitted that its practice was to forego asserting a lien when a patient had commercial health insurance. Plaintiff argues that such a practice is what the contracts here required.

## DISCUSSION

A "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims[.]"). District courts have substantial discretion in ruling on motions for reconsideration. However, in general, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citation omitted).

8

The Court finds that reconsideration is warranted here. Although the parties did not raise the issue in their summary judgment briefs, the Court agrees with Mercy that the Hold Harmless provision only protects Covered Individuals, and Plaintiff did not become a Covered Individual until CareFirst determined that Plaintiff was eligible for coverage for her treatment at Mercy under Plaintiff's health insurance plan. Because Mercy undisputedly asserted the lien before CareFirst made its coverage determination—and at a time when Plaintiff may have been liable for the full amount of Mercy's charges—and released the lien before CareFirst made its determination, Mercy did not breach the Network Agreement's Hold Harmless provision or, by extension, the Consent and Agreement.

The primary Missouri case relied upon by Plaintiff, *Morgan v. Saint Luke's Hosp. of Kansas City*, 403 S.W.3d 115 (Mo. Ct. App. 2013), does not hold otherwise. In *Morgan*, the Missouri Court of Appeals held that a hospital's lien rights were extinguished under Missouri's hospital lien statute, Mo. Rev. Stat. § 430.230, after the patient's health insurer paid the hospital the discounted amount owed under its provider agreement, thus fully satisfying the patient's financial obligation to the hospital. *Morgan*, 403 S.W.3d at 116, 119. The state court reasoned that the discounted payments from the health insurer "serve[d] to extinguish the underlying patient account, i.e. the debt," and under Missouri law, "[a] lien cannot exist in the absence of a debt." *Id.* at 120. In this case, however, Mercy asserted and released its lien before any determination or payment was made by Plaintiff's health insurer to extinguish Plaintiff's debt.

9

As to Plaintiff's point that the presentation of her health insurance card was sufficient for Mercy to determine that she was a Covered Individual on day that she received treatment at Mercy, the Network Agreement forecloses Plaintiff's argument. Specifically, as Mercy notes, Section 2.1 of the Network Agreement states that "[Mercy] acknowledges and agrees that possession of [an identification card], in and of itself, does not qualify the holder thereof as [a] Covered Individual, nor does the lack thereof mean that the person is not a Covered Individual." ECF No. 82-1 at 6. Section 2.5 of the Network Agreement also contains deadlines by which Mercy was required to submit claims to CareFirst, allaying Plaintiff's concern that Mercy could have delayed submission indefinitely. Finally, MRA's self-imposed practice of not asserting liens with respect to patients who had commercial health insurance did not create a contractual obligation.

In short, neither the Network Agreement nor the Consent and Agreement precluded Mercy from asserting a lien at the time and in the manner it did here. Accordingly, the Court will reconsider the Memorandum and Order and will grant Mercy's motion for summary judgment on all counts.

At the hearing Plaintiff conceded that her motion for class certification would also fail if the Court granted Mercy's motion for reconsideration.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Mercy Hospitals East Communities' Motion for Reconsideration is **GRANTED**. ECF No. 152. The portion of the Court's

March 2, 2018 Memorandum and Order denying in part Defendants' motions for summary judgment is vacated.

**IT IS FURTHER ORDERED** that Defendant Mercy Hospitals East Communities' motion for summary judgment is **GRANTED in full**. ECF No. 79.

**IT IS FURTHER ORDERED** that Plaintiff's motion for class certification is **DENIED as moot**. ECF No. 148.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of December, 2018.